[Civ. No. 15269, Fourth Dist., Div. Two. June 4, 1976.]

S. GLEN HICKMAN et al., Plaintiffs and Appellants, v.
JAY I. MULDER et al., Defendants and Respondents.

**COUNSEL**

Burton, Gauldin, Thomson & Nelson, R. Jackson Gauldin and David E. Burton for Plaintiffs and Appellants.

Larwill & Wolfe, John Joseph Hall and William P. Bennett, for Defendants and Respondents.

## Opinion

**McDANIEL, J.—**

### Introduction

The action in the trial court was by the beneficiaries of a purchase-money deed of trust against the trustors to recover damages for alleged "willful" waste of the grapefruit orchards and vineyards covered by the deed of trust. Suit was filed after the plaintiffs had bought in the security noted at a nonjudicial foreclosure sale for less than the full amount of the default. The defendants' demurrer, based primarily on Code of Civil Procedure section 580b, one of the two[1] so-called antideficiency statutes, was sustained without leave to amend. From the judgment of dismissal which followed, the plaintiffs have appealed. The case is squarely controlled by a dictum in *Cornelison* v. *Kornbluth,* 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981], and in obedience to that dictum we must reverse the judgment of dismissal.

### Synopsis of the Amended Complaint

To provide a predicate for discussion of the question tendered, we first paraphrase the key allegations of the plaintiffs' "Amended Complaint For Money (Waste)."

1. In October of 1964, the plaintiffs sold to defendants certain real property consisting of 160 acres of grapefruit orchards and 20 acres of vineyards.

2. As a part of the price paid for the purchase of this property the defendants signed and delivered to plaintiffs a promissory note for $524,750 secured by a deed of trust covering the property purchased. The deed of trust was inscribed in bold caps "THIS IS A PURCHASE MONEY DEED OF TRUST."

3. In June of 1971, defendants took possession of the property.[2]

---

[1]The other antideficiency statute is section 580d of the Code of Civil Procedure which precludes a deficiency judgment following the exercise of a power of sale in the course of a nonjudicial foreclosure of a mortgage or deed of trust.

[2]There is nothing in the record to indicate who was in possession from October 1964 until June 1971.

4. After defendants took possession of the property they "committed acts of waste in regard to said real property in that defendants allowed said real property to deteriorate from willful mismanagement as defendants failed to cultivate, irrigate, fertilize, fumigate, prune and do all other acts necessary to preserve said citrus trees and vines; and have otherwise committed great waste and destruction in and about the premises." (Am. Comp., par. 9.)

5. The defendants defaulted in making the payments due on the note, and plaintiffs caused the property to be sold by the trustee under applicable terms of the deed of trust.

6. At the time of the trustee's sale, the defendants' default amounted to $628,931.87. The plaintiffs (beneficiaries under the deed of trust) bought in the property at the foreclosure sale for $362,700.67 and received the customary trustee's deed.

7. As a proximate result of the acts of waste committed by defendants, plaintiffs were damaged:

"a. $266,231.20 [3] for decrease to the value of said real property;

"b. $25,000.00 for the costs of preventing further waste and curing existing waste;

"c. For loss of income from the production of said citrus trees and vines" in an amount unknown to plaintiffs at the time of the amended complaint.

8. The prayer asked for damages of $291,231.20, loss of income according to proof, costs and reasonable attorneys fees.

### DISCUSSION OF ISSUES AND DISPOSITION

As viewed by the plaintiffs, the question presented by the appeal is whether a cause of action for waste can be stated against the trustors by the beneficiaries of a purchase-money deed of trust after they had purchased the security at a foreclosure sale for a bid which was less than the amount of the debt owed them. It was the decision of the trial court

---

[3] The sum of $266,231.20 is exactly the difference between the default and what plaintiffs bid for the security.

that no such cause of action could be stated; hence the defendants' demurrer was sustained without leave to amend.

Such ruling derived essentially from an application of section 580b of the Code of Civil Procedure quoted in the margin.[4] Under section 580b no deficiency judgment is permitted after foreclosure of a so-called purchase-money deed of trust. The security instrument signed by the defendants was a purchase-money deed of trust. This would seem to dispose of the plaintiffs' claim, and so it appeared to the trial court.

However, such determination necessarily proceeds upon the premise that the recovery sought here is tantamount to a deficiency judgment. Viewed from a different perspective, what is basically involved is an inquiry into the impact of section 580b upon a claim of waste asserted after foreclosure of a purchase-money deed of trust.

This brings the discussion squarely face to face with *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590. In that case, the plaintiff sold a single-family dwelling and as a part of the price she received from the buyers a note secured by a purchase-money deed of trust. The latter contained the standard covenants that the trustors would care for and maintain the property.

The original buyers some months thereafter sold and conveyed the property to Kornbluth, and about four years later he sold the property to someone else. Then about four months later the county health department condemned the house on the property as unfit for human habitation.

In the meantime, the payments on the note had become delinquent, and the plaintiff took the customary steps to cause the property to be put up for sale on foreclosure. The plaintiff bought in the property at the

---

[4]Section 580b of the Code of Civil Procedure reads: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser. [¶] Where both a chattel mortgage and a deed of trust or mortgage have been given to secure payment of the balance of the combined purchase price of both real and personal property, no deficiency judgment shall lie at any time under any one thereof if no deficiency judgment would lie under the deed of trust or mortgage on real property."

trustee's sale for the full amount of the balance due on the note plus foreclosure costs.[5]

After the sale, plaintiff sued and included a cause of action for waste. Defendant admitted purchasing the property, but denied all other allegations. Defendant then moved for summary judgment, and in his supporting declaration stated that he had never assumed the debt secured by the deed of trust and that there was no such assumption in the deed of the property to him. The fact of the full credit bid was also set forth in the supporting declaration. The plaintiff filed no counter declaration, and the court granted the motion. Judgment was entered thereon, and the appeal followed.

In *Cornelison,* the defendant, relying on both antideficiency statutes (above noted), argued that his judgment was supportable on the facts of his declaration. In support of his reliance on section 580b of the Code of Civil Procedure, the defendant cited *Schumacher* v. *Gaines,* 18 Cal.App.3d 994, 998-999 [96 Cal.Rptr. 223]. *Cornelison* was an exact replay of the *Schumacher* facts; although in the latter case the defendant relied solely on section 580b. Justice Regan, writing the opinion in *Schumacher* for the two-man majority, stated at pages 999-1000, "We think the holding in *Brown* v. *Jensen, supra* [41 Cal.2d 193 (259 P.2d 425)], to be that section 580b of the Code of Civil Procedure deprives the holder of a purchase money note and deed of trust of *any* remedy other than the right to look solely to the security and no personal judgment may be recovered. The bar of Code of Civil Procedure section 580b applies against deficiency judgments for enforcement of the obligatory rights flowing from the promissory note secured by the deed of trust."

The defendant in *Cornelison* also pointed to the full credit bid and argued as a further ground for supporting the judgment that the obligation had thereby been extinguished as held in *Duarte* v. *Lake Gregory Land and Water Co.,* 39 Cal.App.3d 101 [113 Cal.Rptr. 893]. Plaintiff on the other hand contended that an action for waste could be maintained independently regardless of the antideficiency statutes noted.

To resolve the issue presented, Justice Sullivan first scrutinized the history of an action for waste. He started with section 2929 of the Civil

---

[5]The full credit bid proved later to be the plaintiff's undoing insofar as the *Cornelison* litigation was concerned. However, plaintiffs here did not make that same mistake and thus preserved their cause of action as will later appear.

Code[6] and, after tracing the evolution of the action for waste, arrived at the conclusion that, "Although a nonassuming grantee of mortgaged property is not personally liable on the debt, his interest in the property is subject to the lien [citations] and therefore he is under a duty not to impair the mortgagee's security. Defendant as a nonassuming grantee of the property subject to plaintiff's deed of trust was under a duty not to commit waste." (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, 599.)

He next faces the defendant's contention, even assuming the duty noted, that the plaintiff was still not entitled to a recovery for waste because such recovery would amount to a deficiency judgment proscribed by the antideficiency statutes. In facing this contention, Justice Sullivan traces at length the history of the antideficiency statutes as outgrowths of the depressed economic conditions prevailing in the early 1930's. In doing so, he explains the economic objectives of this legislation, and then characterizes the impact of section 580b of the Code of Civil Procedure upon the cause of action for waste as codified in section 2929 of the Civil Code. The opinion reads:

"First, we examine the 580b proscription of a deficiency judgment after any foreclosure sale, private or judicial, of property securing a purchase money mortgage. The primary purpose of section 580b is 'in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability.' [Citation.] It is clear that allowing an action for waste following a foreclosure sale of property securing purchase money mortgages may often frustrate this purpose. Damages for waste would burden the defaulting purchaser with both loss of land and personal liability and the acts giving rise to that liability would have been caused in many cases by the economic downturn itself. For example, a purchaser caught in such circumstances may be compelled in the normal course of events to forego the general maintenance and repair of the property in order to keep up his payments on the mortgage debt. If he eventually defaults and loses the property, to hold him subject to additional liability for waste would seem to run counter to the purpose of section 580b and to permit the purchase money lender to obtain what is in effect a deficiency judgment. It is of course true that not all owners of real property subject to a purchase money mortgage commit waste

---

[6]Section 2929 of the Civil Code reads:

"WASTE. No person whose interest is subject to the lien of a mortgage may do any act which will substantially impair the mortgagee's security."

solely or primarily as a result of the economic pressures of a market depression; indeed many are reckless, intentional, and at times even malicious despoilers of property. In these latter circumstances to which we shall refer for convenience as waste committed in bad faith, the purchase money lender should not go remediless since they do not involve the type of risk intended to be borne by him in promoting the objectives of section 580b alluded to above.

"Accordingly, we hold that section 580b should apply to bar recovery in actions for waste following foreclosure sale in the first instance but should not so apply in the second instance of 'bad faith' waste. *We further hold that it is within the province of the trier of fact to determine on a case by case basis to what, if any, extent the impairment of the mortgagee's security has been caused (as in the first instance) by the general decline of real property values and to what, if any, extent (as in the second instance) by the bad faith acts of the mortgagor, such determination, in either instance, being subject to review under the established rule of appellate review.*" (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, 603-604; italics added.)

To summarize, *Cornelison* takes the position that section 580b of the Code of Civil Procedure does not operate to bar recovery for waste after foreclosure of a purchase-money deed of trust if the recovery sought be damages for so-called "bad faith" waste. Significantly, *Cornelison* further plainly states that *it is within the province of the trier of fact* to determine whether the decline in the value of the security has been the result of bad faith waste or has resulted from the depressed condition of the general real estate market.[7]

As a kind of anticlimax, following this exhaustive and keenly reasoned analysis of the relationship between section 580b of the Code of Civil Procedure and an action for waste, *Cornelison* rules that the plaintiff is

[7]In this area of the *Cornelison* opinion appears the following footnote: "This holding is entirely consistent with the following statement by this court in *American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d 611, 614, footnote 2 [68 Cal.Rptr. 453, 440 P.2d 933]: 'If plaintiff [in an action for tortious damage to security] were attempting to reach substitute property, it could do so without being barred by section 580b of the Code of Civil Procedure.' While the footnote does include references to actions for waste against mortgagors, 'the substitute property' referred to is money recovered from third parties who tortiously damage the security, as explained in the case cited in the footnote, *Los Angeles T. & S. B.* v. *Bortenstein* (1920) 47 Cal.App. 421, 424 [190 P. 850]... [A]ctions by mortgagees against nonpossessing third parties for tortious impairment of security are not affected by the antideficiency legislation." (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, 604, fn. 9.)

out of luck even assuming the defendant had committed "bad faith" waste. Why? She had made a full-credit bid for the security, thus extinguishing the obligation and thereby precluding the calculation of any damage. (See *Duarte* v. *Lake Gregory Land and Water Co., supra,* 39 Cal.App.3d 101.) The plain implication, however, absent the full-credit bid, is that plaintiff would have been entitled to a reversal of the judgment because the defendant's declaration would not have been adequate to carry him past the factual issue of bad faith waste. This view is actually confirmed by language toward the end of *Cornelison* where, at page 607, the opinion states, "If, however, he bids less than the full amount of the obligation and thereby acquires the property valued at less than the full amount, his security has been impaired and he may recover damages for waste in an amount not exceeding the difference between the amount of his bid and the full amount of the outstanding indebtedness immediately prior to the foreclosure sale."

Turning then to the case at bench and applying the foregoing proposition in a pleading context, we hold that the allegations of paragraph 9 of the amended complaint, quoted above at page 903 of this opinion, bring the plaintiffs within the ambit of the *Cornelison* dictum noted. More particularly, in view of the nature of the improvements on the land involved, i.e., orchards and vineyards, under Civil Code section 2929 an allegation that the defendants "failed to cultivate, irrigate, fertilize, fumigate, prune and do all other acts necessary to preserve said citrus trees and vines" without question makes out a case for waste. This, coupled with the allegation of "willful mismanagement" brings the pleading effort within the concept of bad faith waste, as announced in *Cornelison,* and entitles the beneficiaries of the deed of trust to take their case to the trier of fact for a determination of whether bad faith waste has actually been committed.

However, certain of the defendants argue that *Cornelison* is of no comfort to the plaintiffs because it requires that bad faith waste be "by owners who . . . are reckless, intentional, and at times even malicious despoilers of property." They then argue that because the plaintiffs allege only acts of omission that there is nothing to indicate that the plaintiffs could honestly allege any act of misconduct by defendants which would amount to bad faith waste as defined by *Cornelison.* Stated otherwise, defendants argue that the plaintiffs' allegations fall within the category of neglecting the general maintenance and repair of the property, a type of waste for which recovery is barred by the anti-deficiency statutes.

Such a contention seems to arise from a misconception of the rationale of *Cornelison*. We do not read *Cornelison* as requiring the mortgagor to have affirmatively engaged in specific, overt behavior which would characterize him as a "malicious despoiler of property" in order for the case to come within the "bad faith" waste concept. Fairly read, that language[8] was only illustrative; that follows, for the opinion describes the obverse situation as an "impairment of . . . security . . . caused . . . by the general decline of real [estate] property values . . . ." (*Cornelison v. Kornbluth, supra,* 15 Cal.3d 590, 604.) The pleading guidelines are thus clearly disclosed. ▇ In the factual situation here presented, it would be a matter of affirmative defense to assert that the impairment of the security resulted from a decline in real estate values, this as a counter to allegations of acts or omissions which bring the case prima facie within the application of section 2929 of the Civil Code. ▇ Again with reference to certain of the defendants' contentions that affirmative behavior is required before a case of bad faith waste can be pleaded, we are of the further view that many occasions of waste arise because of *inaction,* at least insofar as agricultural lands are concerned. This is inherent in the nature of husbandry. To preserve the quality of agricultural lands requires affirmative effort, and so the failure to do what is needed can uniquely be described here as willful. To allow arable land to lie untilled and become weed infested is waste. (*Jeffreys v. Hocutt,* 195 N.C. 339 [142 S.E. 226]; *Lytle v. Payette-Oregon Slope Irr. Dist.,* 175 Ore. 276 [152 P.2d 934, 156 A.L.R. 894].) Failure to care for an orchard is waste. (*Anderson v. Hammon,* 19 Ore. 446 [24 P. 228].) Failure to irrigate is waste. (*Marshall v. Rugg,* 6 Wyo. 270 [44 P. 700].)

If this observation about the unique character of the waste of agricultural lands caused by a failure to act is valid, under *Cornelison* it would be sufficient to plead the specific circumstances giving rise to the claim of waste and next up to the "trier of fact to determine on a case by case basis to what, if any, extent the impairment of the mortgagee's security has been caused . . . by the bad faith acts of the mortgagor . . . ." (*Cornelison v. Kornbluth, supra,* 15 Cal.3d 590, 604.)

---

[8]"It is of course true that not all owners of real property subject to a purchase money mortgage commit waste solely or primarily as a result of the economic pressures of a market depression; indeed many are reckless, intentional, and at times even malicious despoilers of property. In these latter circumstances to which we shall refer for convenience as waste committed in bad faith, the purchase money lender should not go remediless since they do not involve the type of risk intended to be born by him in promoting the objectives of section 580b alluded to above." (*Cornelison v. Kornbluth, supra,* 15 Cal.3d 590, 603-604.)

Aside from the concept of "bad faith" waste imported by *Cornelison,* it seems to us that policy considerations compel a reversal of the judgment. In this we are impressed and persuaded by the dissenting opinion of Presiding Justice Pierce in *Schumacher* v. *Gaines, supra,* 18 Cal.App.3d 994, which cogently distinguishes the mortgagee's right to redress for the tort of waste as compared with his right to enforcement of his financial expectations affected solely by real estate market conditions. As stated in the dissent: "I point out that there is no relationship in this, or any, trust deed or mortgage between the provision against the commission of waste written therein and the obligation of the mortgagor to respond in damage for waste committed on the one hand and the provisions regarding the protection of the mortgagee's security interest, including the procedural steps to enforce them under the law on the other hand. The two provisions are entirely separate and distinct." (*Id.,* at p. 1002.)

In our view, the *Cornelison* dictum which brings into being the refined concept of bad faith waste is tantamount to disapproval of the reasoning in *Schumacher* and an adoption of the dissent of Presiding Justice Pierce therein as the law applicable in cases of waste of the mortgage security as defined by section 2929 of the Civil Code and more generally cognizable under section 1714 of the Civil Code, at least where a full-credit bid by the mortgagee is not involved.

The judgment is reversed with directions to the trial court to enter its order overruling the demurrer to the amended complaint and allowing defendants time to answer.

Kaufman, Acting P. J., and Fogg, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.