[No. C067630. Third Dist. June 27, 2012.]

DONNA FAIT et al., Plaintiffs and Appellants, v.
NEW FAZE DEVELOPMENT, INC., et al., Defendants and Respondents.

**COUNSEL**

Glenn A. Fait and Elizabeth Colegrove for Plaintiffs and Appellants.

Kilpatrick Law Offices, Terence Kilpatrick; Real Estate Law Group and Jason L. Hoffman for Defendants and Respondents.

OPINION

**ROBIE, Acting P. J.**—The owner of a parcel of real property with a building on it demolishes the building to make way for new development. Unfortunately, the owner is unable to complete the development and ends up defaulting on a purchase money promissory note secured by a deed of trust on the property. The holder of the note and deed of trust exercises the power of sale under the deed of trust and buys the property back at a foreclosure sale for less than the amount due under the note. The noteholder then sues the former owner and others for waste and impairment of security based on their demolition of the building, seeking as damages the loss of value in the property that resulted from the destruction of the building. Is such an action barred by the antideficiency statutes (Code Civ. Proc.,[1] §§ 580b, 580d) under the reasoning of *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981]?

The answer to that question is "no." While the Supreme Court in *Cornelison* limited actions for waste following a foreclosure sale under a deed of trust securing a purchase money note to "bad faith" waste, the court defined "bad faith" waste as any waste that is *not* committed as a result of the economic pressures of a market downturn. (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at pp. 603–604.) Accordingly, it is no defense to an action for waste based on the demolition of a building to simply claim that the demolition was part of a good faith attempt to improve the property. The impairment of security that results from the destruction of a building is actionable waste, notwithstanding the antideficiency statutes, unless the destruction itself was somehow caused by the economic pressures of a depressed market.

Based on this conclusion, and a few others, we will reverse the judgment the trial court summarily granted in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Allen Warren is the sole owner and director of defendant New Faze Development, Inc., a company Warren set up to carry out "[t]he functional development responsibilities for a variety of entities." Defendant New Faze Holdings is also wholly owned by Warren. New Faze Holdings "was set up to own and house property prior to going into construction."

Defendant Wendy S. Saunders was employed by New Faze Development from April 2006 through December 2007 as its director of project development. Defendant Jay Rivinius was employed by New Faze Development as its director of construction.

---

[1] Undesignated section references hereafter are to this code.

In February 2005, New Faze Holdings and another company, Soul First Properties, LLC (jointly, the purchasers), purchased from the Harrison Holland Fait and Barbara Fait 1990 Trust (the 1990 Trust) the real estate located at 2005 and 2007 Del Paso Boulevard, Sacramento, for $525,000. The purchasers made a downpayment of $52,500 and executed a $472,500 promissory note to the 1990 Trust secured by a deed of trust on the property.

At the time of the sale in February 2005, there was a building on the property that housed two tenants: a church and a small social services agency. A new roof had been installed on the building in January 1999, and a new ceiling with new light fixtures had been installed in the space rented by the church in the summer of 2003. At the time of sale the building had fully functioning electrical and plumbing systems, the doors and windows were working and intact, and the building was free of graffiti.

The purchasers bought the property with the intent to redevelop it into a mixed-use development including retail, residential, garage, office, and restaurant services. The redevelopment plans required demolition of the existing building and, thus, eviction of the existing tenants, which was accomplished in the fall of 2005. The demolition occurred a year later in October 2006. Warren was the one who decided to demolish the building. As project manager, Saunders ordered the demolition. Rivinius signed an agreement to hold the city harmless from liability for the demolition.

In April 2007, the 1990 Trust transferred its interest in the note and deed of trust to Donna Fait and the Glenn Fait 2005 Trust (the Faits).

Ultimately, the purchasers defaulted on their payments under the promissory note and failed to pay taxes and insurance on the property. As a result, the Faits initiated nonjudicial foreclosure proceedings under the deed of trust. In May 2009, the Faits bought the property at a public foreclosure sale for $14,097. At the time of the sale, there were more than $7,000 in property taxes owed on the property.

In July 2009, the Faits brought this action against the purchasers, New Faze Development, Warren, Saunders, and Rivinius (among others) for bad faith waste and intentional and negligent impairment of security.[2] The cause

---

[2] The cause of action for waste "insofar as it involves protection for the security interest of mortgagees [citation] is limited to protection against harm committed by persons in possession of the property subject to the lien." (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 598, fn. 3.) "However, it is equally clear that a mortgagee's security interest can be impaired by harm to the property committed by third persons not in possession and that a mortgagee can recover damages in tort for such impairment of his security interest." (*Ibid.*) Thus, the cause of action for bad faith waste was applicable to the defendants who were in possession of the property

of action for bad faith waste alleged that the purchasers and Warren committed waste by demolishing the building and failing to pay taxes on the property. The causes of action for intentional and negligent impairment of security alleged that all of the defendants impaired the Faits' security interest by demolishing the building.

In August 2010, New Faze Holdings, New Faze Development, Warren, Saunders, and Rivinius moved for summary judgment or, in the alternative, summary adjudication. As to the first cause of action, they asserted there was "no evidence that any Defendant acted with the required 'bad faith.' "[3] As to the second and third causes of action, they asserted there was "no evidence of improper intent" and that "such a cause of action cannot be asserted against a borrower, its agents or employees."

The gist of their argument on the claim of "bad faith" waste was that they did not intend to harm the property, and they did not act maliciously or recklessly by demolishing the building because the demolition was "based on a good faith belief that the Property could be developed into a legitimate mixed use commercial project." As for the claims for impairment of security, they first argued those causes of action were "entirely derivative" of the cause of action for "bad faith" waste and, as to the nonborrower defendants, it would be "nonsensical" for the court to hold the nonborrowers liable on a "lesser standard" than the "bad faith" standard applicable to a borrower. Thus, in their view, if the first cause of action fell, then the impairment claims had to fall as well. They also argued there was no evidence of the wrongful intent necessary for intentional impairment of security and as to the claim of negligent impairment "the individual (non-borrower) defendants should be dismissed because they [we]re innocent agents of New Faze and [we]re therefore not liable for the mere alleged torts of New Faze."

In opposing the motion, the Faits argued they could prevail on the claim of "bad faith" waste because defendants acted "intentionally" in demolishing the building. In their view, "when waste was not committed solely or primarily as a result of the economic pressures of a market depression, the lender can recover" for "bad faith" waste. The Faits also argued summary judgment should be denied on the impairment of security claims because there was a triable issue of fact as to whether defendants knew of the security interest and they owed a duty to exercise reasonable care not to eliminate that interest.

---

(namely, the purchasers) and the causes of action for intentional and negligent impairment of security were applicable to the defendants who were not in possession of the property.

[3] At oral argument, counsel for respondents asserted that Warren was not a proper defendant to the first cause of action for bad faith waste; however, that was not a basis for the motion in the trial court and therefore we do not consider that issue.

Relying on *Cornelison*, the trial court concluded that "[t]he issue of bad faith waste . . . hinges on whether defendants' conduct in demolishing the building was reckless, intentional despoilment, or malicious." Because defendants had shown that the building demolition was based on a good faith belief that the property could be developed, and they made substantial efforts to get the development project underway, the court concluded there was an "absence of recklessness and intent to despoil at the time of the demolition." Accordingly, the "bad faith" waste cause of action could not be maintained based on the demolition. Because the court found that New Faze Holdings's failure to pay the property taxes *could* qualify as "bad faith" waste, the court denied summary adjudication as to New Faze Holdings on the "bad faith" claim, but the court granted the motion as to the other four defendants.

With respect to the cause of action for intentional impairment of security, the court held it was "derivative of the first cause of action" and therefore the court granted summary adjudication for the reasons stated in connection with the "bad faith" waste claim. The court also agreed it would be " 'nonsensical' " to hold the borrower's agents and employees liable when the borrower itself was "protected from liability for all but 'bad faith waste.' "

As for the cause of action for negligent impairment of security, the court reached the same conclusions as it did with respect to the intentional impairment claim. The court also concluded that "regardless of whether defendants were aware of the Deed of Trust's provisions, plaintiffs make no showing that the building's demolition was a negligent act."

Having granted summary adjudication on all causes of action as to New Faze Development, Warren, Saunders, and Rivinius, the trial court granted summary judgment in their favor. New Faze Holdings remained in the case on the claim of "bad faith" waste for failure to pay taxes on the property.

The Faits timely appealed the judgment in favor of New Faze Development, Warren, Saunders, and Rivinius.

## DISCUSSION

### I

### *Standard of Review*

A defendant may move for summary judgment "if it is contended that the action has no merit . . . ." (§ 437c, subd. (a).) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately

pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Id.*, subd. (p)(2).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).)

"When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].)

"Because the trial court's determination [on a motion for summary judgment] is one of law based upon the papers submitted, the appellate court must make its own independent determination regarding the construction and effect of the supporting and opposing papers. We apply the same three-step analysis required of the trial court. We begin by identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279 [48 Cal.Rptr.2d 229].)

"The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed, and doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion." (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].)

As we will explain, on independent review, we conclude the trial court here erred in summarily adjudicating each cause of action against the Faits and therefore also erred in entering summary judgment against them.

## II

*Bad Faith Waste*

The Faits contend the trial court erred in granting summary judgment because, among other things, there are triable issues of fact as to whether "bad faith" waste was committed. They make this argument, even though the "bad faith" waste claim against New Faze Holdings is not directly before us on appeal, because the trial court determined that the causes of action for impairment of security were "derivative" of the "bad faith" waste claim and summarily adjudicated the impairment causes of action against the Faits because the Faits had failed to raise a triable issue of fact as to "bad faith" waste.

As we will explain, the trial court erred in determining that the cause of action for "bad faith" waste based on the demolition of the building could not be maintained here because of an "absence of recklessness and intent to despoil at the time of the demolition." Under *Cornelison*, any waste that is not committed solely or primarily as a result of the economic pressures of a market depression qualifies as "bad faith" waste. (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at pp. 603–604.) Thus, it does not strictly matter whether those who demolished the building on the property did so based on a good faith belief that the property could be developed, or that they made substantial efforts to get the development project underway. As long as the demolition did not occur solely or primarily as a result of the economic pressures of a market depression, they can be liable for what the Supreme Court in *Cornelison* labeled "bad faith" waste.

To properly understand *Cornelison*, we begin with the facts of the case. There, the plaintiff sold a house and took back a promissory note secured by a deed of trust on the property. (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 594.) The buyers later sold the property to the defendant, who, after nearly four years, sold it to another. (*Ibid.*) The house was condemned as unfit for habitation, and because the original buyers were in default on the promissory note, the plaintiff commenced nonjudicial foreclosure proceedings and purchased the property at the trustee's sale with a full credit bid. (*Ibid.*) Thereafter, the plaintiff brought an action for damages alleging breach of contract and waste. (*Ibid.*) The trial court granted summary judgment in the defendant's favor on the ground that the defendant owed no duty to the plaintiff arising by contract or otherwise. (*Id.* at p. 595 & fn. 1.)

On review, the defendant argued that because the "plaintiff purchased the property for a full credit bid an action for waste is precluded both by reason of the antideficiency legislation [citations] and by reason of the extinguishment of the security interest through a full credit bid at the trustee's sale."

(*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 597.) The plaintiff contended "that an action for waste may be maintained independently of the antideficiency provisions of sections 580b and 580d of the Code of Civil Procedure." (*Ibid.*)

■ The Supreme Court began by explaining that waste is conduct on the part of a person in possession of property that substantially impairs a security interest in the property.[4] (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at pp. 597–599.) While the defendant was not personally liable on the promissory note because he never assumed the obligations of the note, he was "as a nonassuming grantee of the property subject to [the] deed of trust . . . under a duty not to commit waste." (*Id.* at p. 599.)

The court then addressed whether recovery for waste was barred "because such recovery . . . would amount to a deficiency judgment proscribed by sections 580b and 580d." (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 599, fns. omitted.) The court reviewed at length the genesis of the antideficiency statutes (*id.* at pp. 600–602), then turned to "the effect of this antideficiency legislation upon the statutory action for waste" (*id.* at p. 602), explaining as follows:

■ "It will be recalled that damages in an action for waste are measured by the amount of injury to the security caused by the mortgagor's acts, that is by the substantial harm which 'impair[s] the value of the property subject to the lien so as to render it an inadequate security for the mortgage debt.' [Citation.] A deficiency judgment is a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness. [Citation.] It is clear that the two judgments against the mortgagor, one for waste and the other for a deficiency, are closely interrelated and may often reflect identical amounts. If property values in general are declining, a deficiency judgment and a judgment for waste would be identical up to the point at which the harm caused by the mortgagor is equal to or less than the general decline in property values resulting from market conditions. When waste is committed in a depressed market, a deficiency judgment, although reflecting the amount of the waste, will of course exceed it if the decline of property values is greater. However, when waste is committed in a rising market, there will be no deficiency judgment, unless the property was originally overvalued; in this event, there would be no damages for waste unless the impairment due to waste exceeded the general increase in property values.

---

[4] The Supreme Court noted that Civil Code section 2929, "enacted in 1872, codified a portion of the common law action for waste, as developed in England and adopted in early California cases." (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 597, citing Civ. Code, § 2929 ["No person whose interest is subject to the lien of a mortgage may do any act which will substantially impair the mortgagee's security."].)

■ "Mindful of the foregoing, we now proceed to arrive at an assessment of the effect of sections 580b and 580d upon an action for waste. First, we examine the 580b proscription of a deficiency judgment after any foreclosure sale, private or judicial, of property securing a purchase money mortgage. The primary purpose of section 580b is 'in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability.' [Citation.] It is clear that allowing an action for waste following a foreclosure sale of property securing purchase money mortgages may often frustrate this purpose. Damages for waste would burden the defaulting purchaser with both loss of land and personal liability and the acts giving rise to that liability would have been caused in many cases by the economic downturn itself. For example, a purchaser caught in such circumstances may be compelled in the normal course of events to forego the general maintenance and repair of the property in order to keep up his payments on the mortgage debt. If he eventually defaults and loses the property, to hold him subject to additional liability for waste would seem to run counter to the purpose of section 580b and to permit the purchase money lender to obtain what is in effect a deficiency judgment. It is of course true that not all owners of real property subject to a purchase money mortgage commit waste solely or primarily as a result of the economic pressures of a market depression; indeed many are reckless, intentional, and at times even malicious despoilers of property. In these latter circumstances to which we shall refer for convenience as waste committed in bad faith, the purchase money lender should not go remediless since they do not involve the type of risk intended to be borne by him in promoting the objectives of section 580b alluded to above.

■ "Accordingly, we hold that section 580b should apply to bar recovery in actions for waste following foreclosure sale in the first instance but should not so apply in the second instance of 'bad faith' waste. We further hold that it is within the province of the trier of fact to determine on a case by case basis to what, if any, extent the impairment of the mortgagee's security has been caused (as in the first instance) by the general decline of real property values and to what, if any, extent (as in the second instance) by the bad faith acts of the mortgagor, such determination, in either instance, being subject to review under the established rule of appellate review." (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at pp. 602–604.)

■ The *Cornelison* court also assessed "the effect upon an action for waste of section 580d which applies to a nonpurchase money mortgage." (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 604.) Under that statute, the mortgagee can get a deficiency judgment following a *judicial* foreclosure sale but not following a private foreclosure sale under the power of sale in a deed of trust. (*Cornelison*, at p. 604.) The court explained that "[i]f following a nonjudicial sale the mortgagee were allowed to obtain a judgment for

damages for waste against the mortgagor, he would have the double benefits of an irredeemable title to the property and a personal judgment against the mortgagor for the impairment of the value of the property. This would essentially destroy the parity between judicial foreclosure and private foreclosure in all instances where the waste is actually caused by general economic conditions, since as we have explained, such recovery is in effect a deficiency judgment. If, however, the recovery is limited to waste committed in 'bad faith,' then the personal judgment would be entirely independent of the problems encompassed by the antideficiency legislation and would not affect the parity of remedies. Accordingly, we hold that in situations arising under section 580d, recovery for waste against the mortgagor following nonjudicial foreclosure sale is barred by the section's proscription against deficiency judgments when the waste actually results from the depressed condition of the general real estate market but not when the waste is caused by the 'bad faith' acts of the mortgagor." (*Cornelison*, at pp. 604–605.)

Having determined that the antideficiency statutes barred recovery for all but "bad faith" waste, the Supreme Court concluded that whether the defendant was liable for committing "bad faith" waste "need not be resolved" because even if he was liable on that basis, the plaintiff could not recover any damages because she purchased the property by making a full credit bid, thereby establishing that "the value of the security [was] equal to the outstanding indebtedness and ipso facto the nonexistence of any impairment of the security." (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 606.)

We now turn back to the case before us. In the trial court, defendants argued that *Cornelison* "defined 'bad faith waste' as 'reckless,' 'intentional,' or 'malicious' conduct," and they argued there was no such conduct here because "[t]he building demolition was based on a good faith belief that the Property could be developed." The trial court accepted this argument. We do not.

To understand our conclusion requires a proper understanding of *Cornelison*, and to properly understand *Cornelison* it is critical to remember that what the Supreme Court was called on to do there was determine when a cause of action for waste is foreclosed by the policies behind the antideficiency statutes (for our purposes, especially § 580b). In that regard, the court noted that "[t]he primary purpose of section 580b is 'in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with [the] personal liability' " of a deficiency judgment. (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 603.) The court recognized that section 580b accomplishes this by " 'plac[ing] the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security' " and

" '[i]f inadequacy of security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability' " and thus the statute " 'serves as a stabilizing factor in land sales.' " (*Cornelison*, at p. 601, quoting *Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 42 [27 Cal.Rptr. 873, 378 P.2d 97].)

Having identified the purpose behind section 580b, the court in *Cornelison* sought to identify the circumstances in which "an action for waste following a foreclosure sale of property securing purchase money mortgages" would "frustrate this purpose." (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 603.) The court recognized that this would happen when "the acts giving rise to . . . liability [for waste were] caused . . . by the economic downturn itself." (*Ibid.*) In such circumstances, "to hold [the purchaser] subject to . . . liability for waste would . . . permit the purchase money lender to obtain what is in effect a deficiency judgment." (*Ibid.*)

■ In other words, when the owner of property subject to a deed of trust that secures a purchase money loan engages in conduct that impairs the value of the property as security for the loan—i.e., commits waste—because of "the economic pressures of a market depression," the reduction in the value of the property that results is, for all intents and purposes, the same as if the loss in value had resulted directly from the general decline in property values due to the depression. It is in that circumstance that damages for waste would be the functional equivalent of a deficiency judgment.

On the other hand, when the conduct that impairs the value of the property as security is not "solely or primarily . . . a result of the economic pressures of a market depression" (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at p. 604), then damages for waste are *not* the functional equivalent of a deficiency judgment. This is so because such circumstances "do not involve the type of risk intended to be borne by" "the purchase money lender" (*ibid.*)—that is, the risk the security will be inadequate because of a decline in property values due to a general or local depression. Because the purchase money lender does not assume the risk that the security will be devalued by conduct of the owner that is not solely or primarily a result of the economic pressures of a market depression, allowing damages for waste in such circumstances does *not* contravene the policy behind section 580b.

■ Among those circumstances in which the devaluation of security is not the result of economic pressures of a depression are the "reckless, intentional, and at times even malicious despoilers of property" the Supreme Court mentioned in *Cornelison. (Cornelison v. Kornbluth, supra*, 15 Cal.3d at

p. 604.) But we do not understand the *Cornelison* decision to conclude that *only* such "despoilers of property" can be liable for "bad faith" waste. Rather "bad faith" waste occurs *whenever* the owner's impairment of the value of the security is not caused by the economic pressures of a market depression, whether the owner acts recklessly, intentionally, maliciously, or with some other mental state.

Applying that understanding of *Cornelison* here, we conclude the Faits are correct in arguing that triable facts exist as to whether "bad faith" waste was committed in this case. For purposes of determining liability for waste, it is not dispositive that defendants demolished the building as part of their effort to develop the property and thus (presumably) to add value to it. Indeed, defendants may have had the best of intentions, but that fact alone does not entitle them to escape liability for waste. The pertinent question is whether the demolition of the building, which is what the Faits claim impaired the value of the property as security for the note, was caused by the economic pressures of a market depression. Here, that is for the trier of fact to decide.

For example, it appears that in their zeal to develop the property, defendants demolished the building before they had the financial means to complete the development and/or pay off the promissory note.[5] In this circumstance, denying the Faits the right to pursue damages for waste would shift to them not only the risk of property devaluation due to a depressed market, but also the risk of property devaluation due to the overexuberance of a developer in an overheated real estate market preceding a recession. Because the latter is not a type of risk intended to be borne by a purchase money lender, the reasoning of *Cornelison* compels us to conclude that the Faits are not barred by the antideficiency statutes from establishing "bad faith" waste under the facts of this case.

Our conclusion is consistent with the two "bad faith" waste cases from the California state courts the parties cite. In *Nippon Credit Bank v. 1333 North Cal. Boulevard* (2001) 86 Cal.App.4th 486 [103 Cal.Rptr.2d 421], the appellate court affirmed a judgment for "bad faith" waste against borrowers who had failed to pay real property taxes. (*Id.* at pp. 489–493.) In doing so, the court pointed out that "the Partnership [(one of the borrowers)] had accumulated sufficient earnings to make the tax payment and meet its other immediate obligations when it was decided that the taxes would not be paid." (*Id.* at p. 497.) The result in *Nippon Credit Bank* is consistent with our interpretation of *Cornelison* because the failure to pay the property taxes there was *not*

---

[5] In a declaration in support of the motion for summary judgment, Warren asserted that "due to the economic downturn, New Faze was unable to obtain enough financing to perform the construction of the . . . [p]roject and it had to be postponed. This led to New Faze being unable to satisfy its obligations under the Promissory Note."

caused by the economic pressures of a market depression (or any other financial pressures for that matter), and therefore a finding of "bad faith" waste under *Cornelison* was appropriate.

The decision in *Hickman v. Mulder* (1976) 58 Cal.App.3d 900 [130 Cal.Rptr. 304] is even more consistent with our decision here. In *Hickman*, "the beneficiaries of a purchase-money deed of trust [sued] the trustors to recover damages for alleged 'willful' waste of the grapefruit orchards and vineyards covered by the deed of trust." (*Id.* at p. 902.) In reversing a judgment of dismissal following the sustaining of a demurrer without leave to amend, the appellate court explained that "in view of the nature of the improvements on the land involved, i.e., orchards and vineyards, . . . an allegation that the defendants 'failed to cultivate, irrigate, fertilize, fumigate, prune and do all other acts necessary to preserve said citrus trees and vines' without question makes out a case for waste. This, coupled with the allegation of 'willful mismanagement' brings the pleading effort within the concept of bad faith waste, as announced in *Cornelison*, and entitles the beneficiaries of the deed of trust to take their case to the trier of fact for a determination of whether bad faith waste has actually been committed." (*Id.* at pp. 900, 908, 910.)

Some of the defendants argued "that *Cornelison* is of no comfort to the plaintiffs because it requires that bad faith waste be 'by owners who . . . are reckless, intentional, and at times even malicious despoilers of property.' They then argue[d] that because the plaintiffs allege[d] only acts of omission that there is nothing to indicate that the plaintiffs could honestly allege any act of misconduct by defendants which would amount to bad faith waste as defined by *Cornelison*." (*Hickman v. Mulder, supra*, 58 Cal.App.3d at p. 908.) The appellate court rejected this argument, writing as follows: "Such a contention seems to arise from a misconception of the rationale of *Cornelison*. We do not read *Cornelison* as requiring the mortgagor to have affirmatively engaged in specific, overt behavior which would characterize him as a 'malicious despoiler of property' in order for the case to come within the 'bad faith' waste concept. Fairly read, that language was only illustrative; that follows, for the opinion describes the obverse situation as an 'impairment of . . . security . . . caused . . . by the general decline of real [estate] property values . . . .' " (*Hickman*, at p. 909, fn. omitted.)

■ We believe the court in *Hickman* got it exactly right: "bad faith" waste under *Cornelison* is any waste that is *not* the result of the economic pressures of a market depression. Thus, to prevail on a motion for summary adjudication of the "bad faith" waste cause of action here based on the demolition of the building, defendants would have had to produce undisputed evidence that the demolition *was* the result of such economic pressures. They

did not do so. Accordingly, they were not entitled to summary adjudication of the "bad faith" waste cause of action, and, by parity of reasoning, were not entitled to summary adjudication of the impairment causes of action on the ground that those latter causes of action were merely "derivative" of the "bad faith" waste cause of action.

III

*Intentional Impairment of Security*

■ In addition to arguing they were entitled to judgment on the cause of action for intentional impairment of security because it was "derivative" of the "bad faith" waste cause of action, defendants argued there was "no evidence that [they] acted with the requisite intent to harm." The cases they cite, however, do not support their implicit assertion that "intent to harm" is a required element of such a cause of action.

■ In *Easton v. Ash* (1941) 18 Cal.2d 530 [116 P.2d 433], the court held that "[a] mortgagee has a right of action for damages against his mortgagor and third persons who have cut and removed timber from the mortgaged land when these acts have rendered the mortgage insufficient security for the debt." (*Id.* at p. 539.) On the way to this holding, the court noted that the plaintiff had objected to the cutting of the trees on the property and insisted that it be stopped. (*Id.* at pp. 538–539.) At no point in the opinion, however, did the court discuss whether "intent to harm" is required to maintain a cause of action for intentional impairment of security. Because a case is not authority for a proposition not therein considered (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399]), *Easton* is of no assistance to defendants.

The same is true of *Lavenson v. Standard Soap Co.* (1889) 80 Cal. 245 [22 P. 184]. There, knowing the plaintiff had a mortgage on certain property, the defendant (along with the mortgagor) "dug up, detached and removed certain fixtures, permanently attached to the realty, well knowing that such severance and removal would impair and render insufficient [the] plaintiff's security." (*Id.* at pp. 245–246.) The court held "[t]hese facts are amply sufficient to constitute a cause of action, and the demurrers were properly overruled." (*Id.* at p. 246.) Just as in *Easton*, at no point in the opinion did the court discuss whether "intent to harm" is required to maintain a cause of action for intentional impairment of security.

The third case—*Robinson v. Russell* (1864) 24 Cal. 467—is of similar character. At no point in the opinion did the court hold that, or even discuss whether, "intent to harm" is required to maintain a cause of action for intentional impairment of security. Indeed, even defendants here characterize the case as holding only that "defendant's conduct must be that he or she knows their conduct would impair the plaintiff's security."

Inasmuch as defendants failed to show that "intent to harm" is a required element of a cause of action for intentional impairment of security, they failed to show they were entitled to summary adjudication of this cause of action based on the lack of evidence that they acted with such intent. It follows that the trial court erred in granting summary adjudication on this cause of action.

IV

*Negligent Impairment of Security*

In addition to arguing they were entitled to judgment on the cause of action for negligent impairment of security because it was "derivative" of the "bad faith" waste cause of action, defendants argued "the individual (non-borrower) defendants should be dismissed because they [we]re innocent agents of New Faze and [we]re therefore not liable for the mere alleged torts of New Faze." In support of this argument, defendants cited only Witkin, which states that "[o]rdinarily, an innocent agent is not liable for the principal's tort, but in some cases of fraud or conversion, where the agent participates in the act, liability may be imposed." (3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 201, p. 255.) Defendants did not cite to their separate statement of facts to support their assertion that they were "innocent," but instead argued only that "[t]here [wa]s no evidence . . . of any wrongful conduct by any of the individual defendants as it relates to the demolition of the building and/or any other acts."

■■■ California case law recognizes negligent impairment of security as a viable tort. (See *U. S. Financial v. Sullivan* (1974) 37 Cal.App.3d 5, 14 [112 Cal.Rptr. 18].) As the appellate court explained in the *U. S. Financial* case, "It is settled law in this jurisdiction that developers, designers and contractors are liable to purchasers of real property for damages resulting from their negligent acts. [Citations.] We see nothing in principle or public policy that militates against similar liability to a mortgagee or beneficiary of a deed of trust when negligent conduct has resulted in the impairment of the mortgagee's or beneficiary's security interest. [Citation.] Civil Code section 1714

provides: 'Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . .' '[I]n the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy.' " (*U. S. Financial v. Sullivan, supra*, 37 Cal.App.3d at p. 13.)

 In light of the principle that a third party generally can be held liable for negligent impairment of security, defendants bore the burden of demonstrating here in support of their motion for summary judgment why the "individual (non-borrower) defendants" could not be held liable for that tort under the facts of this case. Simply claiming they were "innocent" agents and that "[t]here [wa]s no evidence . . . of any wrongful conduct by any of the[m] . . ." was not enough to carry that burden. Moreover, there was evidence that each of the three individuals was involved in the demolition of the building in one way or another: Warren decided to demolish the building; Saunders ordered the demolition; and Rivinius signed an agreement to hold the city harmless from liability for the demolition. Defendants failed to show in their motion that, as a matter of law, each of these individuals acted with ordinary care or skill with respect to the security interest in the property when they did these things.[6] Accordingly, the trial court erred in granting summary adjudication on this cause of action.[7]

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with directions to vacate its order granting the motion for summary judgment by New Faze Development, Warren, Saunders, and Rivinius and to enter a new

---

[6] We note that in their respondents' brief in this court, defendants have attempted to significantly bolster their argument on the negligent impairment of security cause of action. These new arguments come too late, however, as our task is merely to make our own determination, independent of the trial court, "regarding the construction and effect of the supporting and opposing papers" filed in that court. (*Hernandez v. Modesto Portuguese Pentecost Assn., supra*, 40 Cal.App.4th at p. 1279.) Accordingly, we do not address defendants' new arguments.

[7] To the extent the trial court concluded that "regardless of whether defendants were aware of the Deed of Trust's provisions, plaintiffs ma[d]e no showing that the demolition was a negligent act," it is sufficient to observe that the Faits had no obligation to make any such showing. Rather, as the moving parties, it was defendants who had to show the demolition was *not* a negligent act. Even if they had made that showing, it would have only shifted the burden to the Faits to raise a triable issue of fact, but because defendants never carried their burden in the first place, the burden never shifted to the Faits.

order denying that motion and also denying their alternative motion for summary adjudication in its entirety. The Faits shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Duarte, J., and Hoch, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 17, 2012, S204548.