Filed 7/31/13

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re the Marriage of BYRON GEORGIOU and MARIA LESLIE. | D061200 |
| BYRON GEORGIOU, | |
| Respondent, | (Super. Ct. No. D478168) |
| v. | |
| MARIA LESLIE, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Lorna A. Alksne, Judge. Affirmed.


Law Offices of Marjorie G. Fuller, Marjorie G. Fuller, Lisa R. McCall; Law Offices of Fuller Jenkins and Erik C. Jenkins for Appellant.

Law office of Stephen E. Temko, Stephen E. Temko; Ashworth, Blanchet, Christenson & Kalemkiarian, Sharon L. Kalemkiarian; English & Gloven and Mark M. Gloven for Respondent.

More than three years after entry of judgment, Maria Leslie filed an action under Family Code section 1101,[1] alleging her former husband, Byron Georgiou, breached his fiduciary duty to her during the dissolution proceedings by not disclosing the true value of a community asset divided in the marital settlement agreement (MSA), his prospective referral fee in federal class action securities litigation against Enron Corporation (Enron). The family court granted Georgiou's motion for summary adjudication, determining section 1101 does not authorize a postjudgment action, and alternatively, the action was untimely under the statute's three-year statute of limitations (§ 1011, subd. (d)(1)). Leslie challenges the order, contending both rulings are incorrect.

We conclude section 1101 does not authorize Leslie's action, and thus we are not required to address the alternative ruling. Because the prospective referral fee was not concealed, but rather the parties litigated the issue and the judgment fully adjudicated the asset, Leslie's recourse was an action to set aside the judgment, or a portion thereof, within the one-year limitations period specified in the relevant portion of section 2122, subdivision (f). Because her action was untimely, the court lacked jurisdiction over the matter. We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Leslie and Georgiou married in 1985 and separated in 2003. Georgiou filed for dissolution that year, and a bifurcated judgment terminated the marital status in 2005.

---

[1]     Further undesignated statutory references are also to the Family Code.

Georgiou is an attorney, and in 2000 he entered into an "of counsel" relationship with Milberg Weiss Bershad Hynes & Lerach LLP (Milberg Weiss),[2] which entitled him to a referral fee of 10 percent in class action litigation in which Georgiou secured the plaintiff and the firm was designated lead counsel.

In 2002 Milberg Weiss entered into a contingency fee agreement with the Regents of the University of California (the Regents), which was ultimately designated the lead plaintiff in federal class action securities litigation against Enron. On a sliding scale, the agreement authorized attorney fees of between 8 and 10 percent of the recovery.

In February 2007 Leslie and Georgiou entered into an MSA. Before signing it, Leslie knew of Georgiou's referral fee agreement with Milberg Weiss, that the firm had thus far recovered approximately $7.2 billion in settlement funds, the largest recovery to date in a class action, and the firm would be submitting a request for attorney fees in federal district court under its fee agreement with the Regents. It is undisputed that Georgiou did not give Leslie a copy of the fee agreement.

Leslie deposed Darren J. Robbins, a Milberg Weiss partner designated most knowledgeable about Georgiou's relationship with the firm. Her attorney questioned Robbins on whether the firm had a fee agreement with the Regents, but he did not ask Robbins what percentage of fees the Regents had agreed to pay the firm, nor did he ask for a copy of the agreement. In any event, Robbins testified the federal district court

---

[2]  In May 2004 the Milberg Weiss attorneys prosecuting the Enron action withdrew from that firm and formed Lerach Coughlin Stoia Geller Rudman and Robbins LLP (Lerach Coughlin). In 2007 Lerach Coughlin was renamed Coughlin Stoia Rudman & Robbins LLP. For convenience, we use Milberg Weiss throughout this opinion.

must approve a fee award based on a variety of factors, and it is not bound by a fee agreement.

Robbins also testified Georgiou was entitled to a referral fee from Milberg Weiss in the Enron litigation, but there was a dispute as to the amount of the fee. Robbins said, "I would not imagine any scenario under which [Georgiou] would receive less than three percent." Robbins also said the firm hoped to obtain attorney fees substantially exceeding the largest securities class action fee award to date of $330 million, as that award was based on a much smaller recovery than achieved in the Enron litigation. Robbins estimated Milberg Weiss would obtain fees by the end of 2008.

In a settlement conference brief, Leslie gleaned that Georgiou's referral fee may be between $9 and $33 million, presumably based on a potential fee award to Milberg Weiss of $330 million. She acknowledged, however, that the firm intended to seek "far more than $330 million," and that Georgiou intended to "vigorously argue" he was entitled to a full 10 percent referral fee.

The MSA divided the prospective referral fee unequally. Leslie agreed to accept 10 percent of the fee, in exchange for approximately $7 million in other assets and debt relief. She received the family home, even though it was Georgiou's separate property, eight townhomes that produced net monthly income, a Roth IRA and retirement accounts. He received 90 percent of his referral fee, life insurance policies, loan receivables, business interests, and substantial credit card and other debt. According to Georgiou, Leslie "was taking everything that was certain."

4

The MSA was incorporated in a judgment of dissolution entered on December 12, 2007. About a month later, Milberg Weiss submitted its fee application to the federal district court in the Enron case, requesting 9.52 percent of the ultimate recovery of approximately $7.2 billion, pursuant to the terms of its fee agreement with the Regents. In September 2008 the federal district court issued a lengthy order granting the request as reasonable and awarding Milberg Weiss $688 million in fees.

Milberg Weiss then negotiated a 9 percent referral fee with Georgiou. In September 2008 Georgiou paid Leslie $4 million for her 10 percent share of the fee, which caused her to realize his fee exceeded the top range of $33 million she anticipated when she entered into the MSA. In November 2009 she learned she was entitled to an additional $1.560 million.[3]

Leslie retained a new attorney, and in November 2009 she filed a motion under section 2122, subdivision (d), to set aside the judgment of dissolution based on her mental incapacity. A motion under this provision must be filed within two years after the date of entry of judgment. (*Ibid.*) She argued her former attorney insisted that she enter into the MSA so he could get paid, and implied she was under duress because she had not been taking psychotropic medications as prescribed by her physicians. In September 2010 after retaining yet another attorney, Leslie dismissed the motion.

---

[3] Georgiou states he made payments to Leslie totaling $5,568,200 for her 10 percent share of his net referral fee, meaning he recovered $55,682,000. She claims he must have recovered more than that amount, since he was entitled to 9 percent of $688 million, and he did not fully pay her 10 percent share. That issue is not germane on appeal.

On December 13, 2010, however, Leslie filed this action under section 1101 for Georgiou's breach of his fiduciary duty of disclosure. The gist of the action was that Georgiou deceived her into believing his potential referral fee would be between $9 and $33 million, by not providing her with a copy of the fee agreement between Milberg Weiss and the Regents and inventing or exaggerating a dispute with the firm over the amount of his referral fee. She argued that had she known the terms of the fee agreement, she could have calculated that Milberg Weiss stood to obtain a $688 fee award. Leslie sought either 50 percent or 100 percent of the referral fee pursuant to section 1101, subdivisions (g) and (h).[4]

Georgiou moved for summary adjudication, arguing her action was untimely because she did not file it within three years from the date she had "actual knowledge that the transaction or event for which the remedy is being sought occurred." (§ 1101, subd. (d)(1).) Leslie argued her action did not accrue until September 2008 when she learned the amount of Georgiou's referral fee and realized he had understated his potential fee in breach of his fiduciary duty.

The court determined, sua sponte, that relief for breach of fiduciary duty under section 1101 "is not legally available in a post-marital dissolution judgment action." The court interpreted section 1101 to authorize an action in only three instances: (1) during

---

[4] Leslie also claims Georgiou failed to fully disclose potential fees from Milberg Weiss in matters other than Enron, but we are not required to discuss those claims separately. Our holding applies to all claims.

an intact marriage; (2) in conjunction with a dissolution proceeding; or (3) after the death of a spouse.

The court also found that section 2122, subdivision (e), under which a judgment may be set aside for mistake, provided Leslie's sole recourse, but such an action was not viable because the statute's one-year limitations period was long expired. Alternatively, the court determined that even if section 1101 applied, her action was barred by the statute's three-year limitations period since she knew when she signed the MSA that she did not have a copy of Milberg Weiss's fee agreement with the Regents.

DISCUSSION

I

*Standard of Review*

Leslie contends the court erred by granting summary adjudication. She asserts the court misinterpreted section 1101 to authorize an independent action for breach of fiduciary duty only in an intact marriage.

A defendant meets his or her burden in a summary adjudication motion "by negating an essential element of the plaintiff's case, or by establishing a complete defense, or by demonstrating the absence of evidence to support the plaintiff's case." (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1142; Code Civ. Proc., § 437c, subd. (f)(1) [party may move for summary adjudication as to "one or more affirmative defenses"].) "We review questions of law as well as orders granting summary adjudication under the de novo standard of review." (*Lafferty v. Wells Fargo Bank*

7

(2013) 213 Cal.App.4th 545, 556.)  Likewise, the interpretation of a statute presents a legal question we review independently.  (*Ibid*)

II

*Applicable Law/Analysis*

A

*Fiduciary Duties During Dissolution Proceedings*

Spouses have fiduciary duties to each other as to the management and control of community property.  (§§ 721, subd. (b), 1100, subd. (e).)  "[I]n transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other.  This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other."  (§ 721, subd. (b).)

The fiduciary duties expressly extend throughout dissolution proceedings.  (§§ 2100, subd. (c), 2102-2107.)  "From the date of separation to the date of the distribution of the community or quasi-community asset or liability in question, each party is subject to the standards provided in Section 721, as to all activities that affect the assets and liabilities of the other party."  (§ 2102, subd. (a).)  "[A] full and accurate disclosure of all [the parties'] assets and liabilities . . . must be made in the early stages of a proceeding for dissolution of marriage."  (§ 2100, subd. (c).)  "It reasonably follows that a spouse who is in a superior position to obtain records or information from which an asset can be valued and can reasonably do so must acquire and disclose such information

8

to the other spouse." (*In re Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334, 1348.)

Further, "each party has a continuing duty to immediately, fully, and accurately update and augment that disclosure to the extent there have been any material changes." (§ 2100, subd. (c).) The final declaration of disclosure shall include "[a]ll material facts and information regarding the valuation of all assets that are contended to be community property." (§ 2105, subd. (b)(2).) "The formulation of a marital settlement agreement is not an ordinary business transaction, resulting from an arm's-length negotiation between adversaries. Rather, it is the result of negotiations between fiduciaries required to openly share information." (*In re Marriage of Brewer & Federici, supra,* 93 Cal.App.4th at p. 1344.)

B

*Postjudgment Remedies
For Breach of Fiduciary Duty*

1

There are, of course, postjudgment remedies for breach of the fiduciary duty of full disclosure during dissolution proceedings. Within the first six months after entry of judgment, the court has discretion to set aside a judgment under Code of Civil Procedure section 473, subdivision (b) on the grounds of "mistake, inadvertence, surprise, or excusable neglect." (*In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138.) Historically, "[c]ourts have also been held to have inherent power to set aside a judgment,

9

even after the six-month period of Code of Civil Procedure section 473 has passed, if the parties have been deprived of the opportunity to litigate their claim."  (*Id.* at p. 139.)

Further, "[i]n 1993, a chapter entitled Relief from Judgment was added to the Family Code.  (§§ 2120-2129, added by Stats. 1993, ch. 219, § 108, pp. 1615-1617.) . . . In adopting this chapter, the Legislature found '[t]he law governing the circumstances under which a judgment can be set aside, after the time for relief under Section 473 of the Code of Civil Procedure has passed, has been the subject of considerable confusion which has led to increased litigation and unpredictable and inconsistent decisions at the trial and appellate levels.' (§ 2120, subd. (d).)"  (*Rubenstein v. Rubenstein, supra,* 81 Cal.App.4th at p. 1143.)

Section 2120, subdivision (a), acknowledges that California's strong public policy of ensuring the fair division of community property can only be implemented with full disclosure of community property.  Section 2120 also provides:  "(b)  It occasionally happens that the division of property . . . , whether made as a result of agreement or trial, is inequitable when made due to the nondisclosure or other misconduct of one of the parties.  [¶]  (c)  The public policy of *assuring finality of judgments* must be balanced against the public interest in *ensuring proper division of marital property*, . . . and in deterring misconduct."  (Italics added.)  Section 2120 et seq. applies to dissolution judgments adjudicating support or division of property entered on or after January 1, 1993, and as to such judgments all prior law on "equitable" set-aside relief is preempted.  (§§ 2121, subd. (a); 2129; Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2012) ¶ 16:101, p. 16-28 (Hogoboom).)

10

"Section 2122 sets out the *exclusive grounds and time limits* for an action or motion to set aside a marital dissolution judgment." (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 684, italics added.) "Unlike traditional equitable set-aside law where 'laches' is the only time limit on relief . . . , [section] 2120 et seq. accommodates the public policy interest in putting an end to litigation and ensuring the 'finality' of family law judgments by setting *absolute deadlines* on obtaining a post-[judgment] set-aside. Once the statutorily-prescribed period expires [section 2122], set-aside relief is *not available* and the judgment is effectively *final for all purposes*." (Hogoboom, *supra*, ¶ 16:104, p. 16-31.)

Under section 2122, there are six grounds to set aside a judgment, or portion thereof, including actual fraud, perjury, duress, mental incapacity, mistake, and the failure to fully disclose the value of assets under section 2100 et seq. (§ 2122, subds. (a)-(f).) "Upon vacating the judgment, in whole or in part, a trial court is empowered to make an unequal distribution of the concealed assets, in the interests of justice. (§ 2126.)" (*Rubenstein v. Rubenstein, supra,* 81 Cal.App.4th at p. 1146.)

Subdivision (e) of section 2122 states that "[a]s to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties," a set aside motion may be based on "mistake, either mutual or unilateral, whether mistake of law or mistake of fact." Here, the family court determined Leslie's action was controlled by subdivision (e) of section 2122, based on opinions holding that a judgment of dissolution may be set aside under that provision for the breach of the fiduciary duty of full disclosure. (*In re Marriage of Varner*, *supra*, 55 Cal.App.4th at pp. 143-144; *In re Marriage of Brewer &*

11

*Federici*, *supra*, 93 Cal.App.4th 1334, 1344.)  These opinions, however, were based on a previous iteration of section 2122.  In 2001, the Legislature amended section 2122 to specify as a ground for relief the "[f]ailure to comply with the disclosure requirements of Chapter 9 (commencing with Section 2100)."  (§ 2122, subd. (f).)

Leslie, however, waited too long to pursue relief under section 2122.  An action based on the failure to disclose "shall be brought within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply."  (§ 2122, subd. (f).)  Likewise, a set-aside action for actual fraud is subject to a limitations period of one year from the date of actual or implied discovery.  (§ 2122, subd. (a).)  Leslie discovered in September 2008 that Georgiou obtained a referral fee substantially higher than she alleges he alluded was possible and she did not file her action until December 2010.

2

With the applicable section 2122 limitations period expired, Leslie relied on section 1101.  Subdivision (a) of section 1101 provides:  "A spouse has a claim against the other spouse for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate, including, but not limited to, a single transaction or a pattern or series of transactions, which transaction or transactions have caused or will cause a detrimental impact to the claimant spouse's undivided one-half interest in the community estate."

Section 1101, subdivision (d)(1), provides that a claim for breach of fiduciary duty "shall be commenced within three years of the date a petitioning spouse had actual

12

knowledge that the transaction or event for which the remedy is being sought occurred."

Section 1101, subdivision (d)(2), provides that "[a]n action may be commenced under this section upon the death of a spouse or in conjunction with an action for legal separation, dissolution of marriage, or nullity without regard to the time limitations set forth in paragraph (1)."[5] Leslie claimed this is an independent action subject to the three-year limitations period, rather than an action brought in conjunction with the dissolution proceeding.

The family court determined section 1101 authorizes an independent action only during an intact marriage. Subdivision (f) of section 1101 provides: "Any action may be brought under this section *without filing an action for dissolution of marriage*, legal separation, or nullity, or may be brought in conjunction with the action or upon the death of a spouse." (Italics added.) While California allows interspousal actions, section 1101 does not expressly preclude postjudgment actions. As a commentator observes, "spouses are not apt to sue each other while happily married."

(Hogoboom, *supra*, ¶ 8:638, p. 8-158.10.)[6]

---

[5] Additionally, any action under section 1101 is subject to a laches defense. (§ 1101, subd. (d)(3).) " ' "The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." ' " (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1418.)

[6] As another commentator puts it, "While this might decrease the spouses' present emotional happiness, it can increase their utility curve for wealth, as one spouse signals to the other that personal finances, investment opportunities, and opportunity costs are, and will be, closely monitored during marriage." (Carillo, *The M Word: From Partial Coverture to Skills-Based Fiduciary Duties in Marriage* (2011) 22 Hastings Women's L.J. 257, 268.)

The court also noted section 1101 is part of Division 4, Part 4 of the Family Code, entitled "Management and Control of Marital Property," and the "language throughout Division 4 uses the terms 'spouse,' 'husband and wife' and 'married person.' " (See § 700 et seq.) In contrast, section 2122 appears in Division 6, Part 1 of the Family Code, entitled "Nullity, Dissolution, and Legal Separation," and Division 6 "switches to the term 'party.' " (See § 2000 et seq.) Leslie asserts labels are immaterial, because section 11 explains that in the Family Code, a "reference to 'husband' and 'wife,' 'spouses,' or 'married persons,' or a comparable term, includes persons who are lawfully married to each other and persons who were previously lawfully married to each other, as is appropriate under the circumstances of the particular case."

Leslie also cites *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34 (*Rossi*), as authority for the applicability of section 1101 to her action. In *Rossi,* judgment on a marital settlement agreement was entered in April 1997, and in May 1999 the former husband learned for the first time that his former wife had received lottery winnings during the marriage. In July 1999 he filed an action against her under section 1101. The family court determined the wife committed fraud within the meaning of Civil Code section 3294 by concealing the winnings, and it penalized her by awarding the husband 100 percent of the winnings under section 1101, subdivision (h). (*Rossi, supra,* at p. 39.) The appellate court affirmed the ruling, concluding, "This case presents precisely the circumstance that . . . section 1101, subdivision (h) is intended to address." (*Id.* at p. 42.)

Relying on *Rossi,* Hogoboom indicates section 1101 may provide a postjudgment remedy for breach of fiduciary duty in proper circumstances. Chapter 16, which is

14

entitled "Postjudgment Motions, Appeals & Writs," states that while section 2120 et seq. preempts a tort remedy arising out of a dissolution proceeding, "remedies otherwise authorized by law, are not preempted by [section] 2120 et seq.  [¶]  For instance, subject to statutory time limitations, a spouse alleging intentional *nondisclosure or concealment* of marital property in violation of statutory duties of disclosure may pursue alternative remedies of a set-aside based on concealment and breach of fiduciary duty *or* an award of 50% or 100% of the concealed property" pursuant to section 1101, subdivisions (g) and (h).  (Hogoboom, *supra*, ¶ 16:103.2, pp. 16-30 to 16-31, italics added, citing *Rossi*, *supra*, 90 Cal.App.4th at pp. 38-39.)

In *Rossi*, *supra*, 90 Cal.App.4th 34, however, there was no contention that section 1101 is inapplicable to postjudgment proceedings.  "[A] case is not authority for a proposition not therein considered."  (*Fait v. New Faze Development, Inc.* (2012) 207 Cal.App.4th 284, 301.)

Moreover, the facts of *Rossi* are readily distinguishable from those here.  In *Rossi,* the lottery winnings were concealed and not addressed in the judgment of dissolution. Thus, the winnings could be divided in a postjudgment action under section 1101, pursuant to its harsh 100 percent penalty provision (§ 1101, subd. (h)), without affecting the judgment's division of other community property.  In other words, the section 1101

15

action did not violate the strong public policy of ensuring the finality of judgments within the one-year limitations period of section 2122.[7]

Here, Georgiou not only disclosed his prospective referral fee in the Enron litigation, it was a major factor during negotiations on the MSA and the subject of discovery by Leslie's attorneys. The judgment fully adjudicated the issue, with the MSA awarding Leslie 10 percent of the fee and Georgiou 90 percent of the fee, and dividing the remainder of the community assets and debts to reflect the disparity.

" 'A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject.' " (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.) " ' "The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together." ' " (*In re Greg F.* (2012) 55 Cal.4th 393, 407.) "We . . . construe the words in context, keeping in mind the statutory purpose . . . relating to the same subject, both internally and with each other, to the extent possible."

---

[7]    Leslie's reliance on *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, is also misplaced. Again, in *Hokanson* the applicability of section 1101 to a postjudgment action was not raised or discussed. Further, the facts of *Hokanson* are nothing like the facts here. In *Hokanson,* the judgment of dissolution imposed a duty on the former wife to sell the family home, and the former husband later brought an action against her for delaying the sale. (*Hokanson*, *supra*, at pp. 990-991, 994.) As in *Rossi*, *supra*, 90 Cal.App.4th 34, the section 1101 action did not require upsetting the judgment.

(*Outfitter Properties, LLC v. Wildlife Conservation Bd.* (2012) 207 Cal.App.4th 237, 244.)

Sections 2122 and 1101 pertain to the same subject matter, as they both provide remedies for breach of the fiduciary duty of disclosure.  In Leslie's view, the remedies are interchangeable, and if a party misses the one-year deadline for an action under subdivision (f) of section 2122, he or she may bring an action under section 1101, subdivision (d)(1), within the three-year limitations period.

Section 2120 et seq. takes precedence, however, "when either party is seeking to 'undo' a property division judgment that *adjudicated* particular assets and/or liabilities.  By contrast, those statutes have *no* effect on proceedings to determine community interests in assets and liabilities that were *unadjudicated* or *omitted* from the judgment." (Hogoboom, *supra*, ¶ 16:160, p. 16-47; *In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 939 ["property left unadjudicated by a divorce decree is subject to future litigation, the parties being tenants in common in the meantime"]; see also § 2556 ["the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding"].)  "The mere mention of an asset in the judgment is not controlling. [Citation.]  '[T]he crucial question is whether the benefits were actually litigated and divided in the previous proceeding.' "  (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 501.)

We are not required to determine the propriety of the court's finding that section 1101 *never* authorizes a postjudgment action for breach of fiduciary duty.  Rather, we

17

conclude section 1101 does not authorize a postjudgment action in these circumstances, because the referral fee cannot be disposed of without upsetting the judgment, or at least a portion of it. The judgment divided Georgiou's referral fee unequally, and divided the remainder of community assets and debts based on the disparity. Leslie cannot take the benefits of the judgment and also obtain 50 percent or 100 percent of the referral fee under section 1101, subdivision (g) or (h). To interpret section 1101 as Leslie urges, we would have to ignore section 2120 et seq. and the strong public policy of assuring finality in judgments within a reasonable time (§ 2120, subd. (b)).

The court correctly found Leslie's exclusive remedy was a set-aside action under section 2122. Because she did not file her action within the one-year limitations period of subdivision (f) of section 2122, the family court lacked jurisdiction over the matter and summary adjudication was proper. (*In re Marriage of Thorne & Raccina*, *supra*, 203 Cal.App.4th at p. 500.)[8]

---

[8] Given our holding, we are not required to consider legislative history materials Georgiou submitted in support of his assertion that an independent action under section 1101 may only be brought during an intact marriage. Further, we are not required to address the court's alternative ruling that even if section 1101 were applicable, the action is barred by its three-year statute of limitations (§ 1101, subd. (d)(1)).

## DISPOSITION

The order is affirmed.  Georgiou is entitled to costs on appeal.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

O'ROURKE, J.