Filed 5/13/14  Marriage of Dang CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of XUAN and DUNG DANG. | |
| XUAN DANG,<br><br>        Respondent,<br><br>v.<br><br>DUNG DANG,<br><br>        Appellant. | A139067<br><br>(Alameda County<br>Super. Ct. No. HF10531756) |

Dung Dang (Husband) appeals from a judgment resolving outstanding property issues arising from the dissolution of his marriage to Xuan Dang (Wife).  We affirm the trial court's rulings.

## I.  BACKGROUND

The parties were married on September 20, 2002, and separated on August 6, 2010.  They had one child together, born in 2008.  After a two-day trial on outstanding property issues, the trial court made the following rulings that are the subject of this appeal:  (1) Husband was liable to Wife based on losses of approximately $75,000 resulting from his unauthorized trading in a TD Ameritrade stock margin account (TDA account) after their separation; (2) Husband is not entitled to reimbursement based on the community use of proceeds from the refinance of his separate property; and (3) based on the values of three community vehicles divided between the parties, Husband must provide Wife an equalizing payment of $2,973.

**A.** *TDA Account*

Throughout the marriage, Husband engaged in online day trading with the TDA account, which was in his name. Husband never claimed during the marriage that the account was his separate property. Before their separation, Wife was aware of Husband's day trading but played no role in it and asked no questions about it.

Wife's dissolution petition was filed on August 18, 2010. Husband was served the next day with a summons and other papers notifying him he was subject to the standard family law temporary restraining orders including that he was enjoined from "[t]ransferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life . . . ." Husband admitted he received the papers served on him, but he did not read them carefully and was unaware he could not continue his day trading out of the TDA account without obtaining Wife's consent or a court order. He never informed her when the account balance rose to $200,000, never gave her an option of removing her share of the funds from the account, and never discussed with her what trades he was making or his trading strategy. Wife testified she asked him for her share of the account many times but he refused, saying he would need to use her share to offset what she owed him for the refinance debt he incurred on his house.

On September 3, 2010, Husband withdrew $5,100 from the TDA account and deposited it in a checking account from which the funds were apparently used to pay off an American Express credit card bill reflecting community debt.

Due to trading losses, the TDA account's balance had dropped to slightly over $26,000 by February 2012. On February 7, 2012, Husband disclosed to Wife for the first time the substantial drop in value that had occurred. An immediate freeze was put on the account and $13,000 was awarded to Wife.

2

The trial court found Husband had a duty under Family Code section 1100, subdivision (e)[1] to promptly notify Wife of all material facts concerning the TDA account, and that by waiting until February 2012 to disclose the losses on the account to her, he denied her the ability to avoid the losses by removing her share of the funds or requiring her share be invested more conservatively. The court determined that Husband owed Wife $37,175 as damages for this breach. Using the closing value of the account for August 31, 2010 shown on the TDA account statement for the period August 1 to August 31, 2010, the court found that the value of the account was $100,350 near the date of separation.[2] The court halved this amount to $50,175 to determine Wife's share of it, and then subtracted the $13,000 Wife was awarded in 2012 to arrive at her damages of $37,175.

## B. *Recoupment of Refinance Proceeds*

Before the marriage, Husband owned a residential property on Meek Avenue in Hayward that the parties used as the family home. There were two refinances of the property during the marriage, one in 2002 that resulted in the parties taking cash proceeds of $136,000, and a second in 2005 resulting in a cash out of $95,587. There is no dispute the 2005 proceeds were used to make a downpayment for the purchase of a community investment property—a residence next-door to their Meeker Avenue home that was later

---

[1] Family Code section 1100, subdivision (e) states: "Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as the assets and liabilities have been divided by the parties or by a court. This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request."

[2] The TDA account statement showed the account had a "Prior Value" of $92,439.42 on July 31, 2010, and a "Current Value" of $100,350.66 on August 31, 2010. The statement did not show the account's daily fluctuations during the month.

lost to foreclosure. Husband contended the 2002 proceeds were used to (1) pay $25,000 to Wife's attorney in Canada and for her travel to Canada in connection with a custody dispute over her child by a previous marriage;[3] (2) pay Husband's support obligation from a prior marriage; (3) purchase a Mitsubishi vehicle; and (4) pay for general family expenses. Wife contended she had no knowledge of the 2002 refinance, which occurred two months after the couple married. Her understanding was that Husband used the 2002 cash out proceeds to pay off his ex-wife, remodel his house, purchase a BMW, and send money to his relatives in Vietnam. Although she did have to hire a Canadian lawyer, she testified the lawyer's fees were ultimately paid by her ex-husband under court order.

In his trial brief, Husband stated: "[Husband] is now stuck with the indebtedness from both re-finances. At the very least [Husband] should receive judgment against [Wife] for one-half of the amount of the second re-financing which was a joint investment opportunity both parties decided to undertake. Although a full detailed accounting cannot be provided of all of the expenditures out of the first re-financing, it is certain that [Wife] benefitted from said loan and therefore any claim to reimbursements or credits which the Court might uphold in her favor should be negated."

The trial court denied Husband any reimbursement for one-half of the downpayment on the investment property that had been lost to foreclosure. The court found that reimbursement for separate property contributions to the acquisition of community property real estate by law must come from the purchased property. Since the property was a complete loss, and had no value, the court held Husband was not entitled to reimbursement from Wife. The court did not identify any claim arising from the 2002 refinance of Husband's property as one of the five issues "identified as remaining for the court's determination," and did not address any such issue.

## C. *Division of Vehicles*

The parties divided up three community vehicles. Wife had a 2010 Lexus. Husband had a 2002 Lexus and a 2006 Yamaha motorcycle. Wife came forward with

---

[3] Wife was living in Toronto when the parties met.

4

evidence the 2010 Lexus was worth $30,535 less a lien of $30,186, the 2002 Lexus was worth $5,410, and the motorcycle was worth $3,585.  Husband did not produce any values at trial but argued the 2010 Lexus was worth more than $30,535.  In his trial brief, Husband also sought reimbursement for a $4,600 credit the couple received toward the purchase of the 2010 Lexus based on the trade-in of his separate property Toyota Previa.  This consisted of a $4,500 credit under the "cash for clunkers" program in effect in 2009, and $100 for the scrap value of the Previa.

Based on the Kelley Blue Book values provided, the court valued the 2010 Lexus at $33,235, its trade-in value, and found it had a net value of $3,049.  It accepted Wife's proposed values for Husband's motorcycle and 2002 Lexus.  It determined Husband therefore owed Wife $2,973 as an equalizing payment, and did not address Husband's claim for a $4,600 reimbursement.

## II.  DISCUSSION

### A.  *Standard of Review*

We review the trial court's judgment dividing marital property for abuse of discretion, reversing only if its decision is not supported by substantial evidence.  (*In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 201; *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 966.)  This court views the entire record in the light most favorable to the prevailing party to determine whether there is substantial evidence to support the trial court's findings.  (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.)  We must resolve all conflicts in the evidence and draw all reasonable inferences in favor of the findings.  (*Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1289.)  We review questions of law de novo. (*In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 230.)

Because no statement of decision was requested or prepared, under the doctrine of implied findings, we infer the trial court made any and all findings necessary to support the judgment, and review the implied findings under the substantial evidence standard. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134.)

5

**B.** *TDA Account*

Husband contends the court erred in awarding any damages to Wife based on his claimed violation of Family Code section 1100, subdivision (e) or other breach of duty. In the alternative, he argues the court overstated the amount of damages to which Wife was entitled by (1) using the value of the TDA account on August 31, 2010, rather than its lower value of $92,439.42 on July 31, 2010, to calculate Wife's damages; and (2) failing to give him credit in determining damages for net deposits he assertedly made into the account after separation, or for one-half of the $5,100 withdrawn from the account after separation to pay off the parties' American Express credit card debt.

**1.** *Liability*

"A spouse has a claim against the other spouse for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate, including, but not limited to, a single transaction or a pattern or series of transactions, which transaction or transactions have caused or will cause a detrimental impact to the claimant spouse's undivided one-half interest in the community estate." (Fam. Code, § 1101, subd. (a).)

Spouses have fiduciary duties to each other with respect to the management and control of community property. (*In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 569.) Those duties last throughout the dissolution proceedings, (*ibid.*), and include the *affirmative* duty to "reveal[] any material changes in the community estate, such as the transfer or loss of assets." (*In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1271.) The fiduciary duties of disclosure specified in Family Code section 1100, subdivision (e) thus apply without regard to whether the nonmanaging spouse requests the information. (*In re Marriage of Walker* (2006) 138 Cal.App.4th 1408, 1419–1428.) In addition, improvident investments of community property can amount to a breach of fiduciary duty if they rise to the level of grossly negligent or reckless conduct. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2013) ¶ 8:606.2, p. 8-156.7.)

6

In our view, the trial court did not abuse its discretion in holding Husband liable for the loss in value of the TDA account after separation. His daily margin trading activities were inherently risky and violated the automatic temporary restraining orders. There was substantial evidence he refused Wife's request for her share of the account, failed to notify her of material losses in the account, and deprived her of the opportunity to protect the value of her interest in the account. He breached his fiduciary duty to her, and the trial court therefore acted within in its discretion in holding him liable for Wife's share of the losses.

## 2. *Damages*

The trial court also did not abuse its discretion in using the value of the TDA account on August 31, 2010 to measure the losses. That date was near the date of separation, August 6, 2010, and therefore constituted substantial evidence of the account's value on that date. August 31 was also closest to the date Husband was served with notice of the temporary restraining orders in effect. For substantial evidence purposes, it is irrelevant that the court had another data point close in time to August 6 that it could have chosen. We note Husband came forward with no evidence of his own as to the account's value on August 6, even though the value of the account on that day might have been obtainable from TD Ameritrade, or by reconstructing it based on the trading and holdings records available to Husband. In the absence of such direct evidence, and given the likely amount of daily fluctuation in account value, it was within the trial court's discretion to choose either of the two dates for which valuation evidence was available.

Husband asserts the award to Wife for his breach of fiduciary duty is also overstated because it fails to take into account net deposits of approximately $10,000 he alleges he made into the TDA account between August 31, 2010 and February 2012. He also proposes the trial court should have deducted $5,220.02 from the value of the account on August 31, 2010, since that amount was used postseparation to pay off a community debt—the American Express card bill—and was not a trading loss on the

7

account.[4]  We find nothing in the record to indicate that Husband raised either of these arguments in the trial court.  He bases his net deposit argument on a chart apparently produced by Wife that was never authenticated or admitted in evidence.  There was no testimony about who prepared it and how it was prepared, and no testimony tracing the source of the funds deposited to the account.  Husband referred to the chart in his trial brief, but only to make the point that the diminution in the TDA account was not due to net withdrawals.  We found no argument in the trial court record that the interests of the parties in the TDA account, or the determination of Wife's damages for Husband's breach of fiduciary duty should be adjusted to reflect Husband's asserted net deposits.

Regarding the American Express card bill, Husband took the position in the trial court that he paid it with his separate funds, a position the trial court rejected when the evidence showed the funds used to pay it came out of the TDA account.  Husband did not argue for any adjustment in the determination of his stock losses based on the source of the funds.  Points not raised in the trial court are forfeited on appeal.  (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226.)

**C.  *2002 Refinance***

Husband contends the trial court failed to rule on whether he was entitled to reimbursement based on proceeds from the 2002 refinance of his separate property residence that he asserts were used to pay for Wife's attorney and travel expenses in connection with her custody dispute in Canada, vocational education she received, a Mitsubishi automobile purchased for her use, and general family expenses.  He is seeking reimbursement of $68,000 from Wife, half of the cash proceeds from the 2002 refinance.

It has long been the rule that a spouse who elects to use his or her separate property to meet community expenses (apart from the acquisition of property) cannot claim reimbursement, in the absence of an agreement.  (See *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 816; *See v. See* (1966) 64 Cal.2d 778, 785; *In re Marriage of*

---

[4] Elsewhere, Husband states $5,100 was withdrawn from the TDA account for this purpose.  The record shows the amount was $5,100.

8

*Nicholson & Sparks* (2002) 104 Cal.App.4th 289, 294–295.)  In any event, Husband admitted in his trial brief that he could not provide a full accounting of all the expenditures made out of the 2002 refinancing.   He put in no evidence of the amounts spent that benefitted Wife.  He did not in fact seek reimbursement in the trial court for any funds spent out of the 2002 refinance proceeds, but only requested the court to negate or offset any claim to reimbursement or credit by Wife that it might otherwise award to her.   Thus, even assuming for the sake of analysis that (1) there was a legal basis for Husband's reimbursement claim in whole or in part, and (2) he did not waive the claim prior to trial, there was simply no evidentiary basis in the record for granting him relief.  Substantial evidence supports the trial court's implied finding that Husband was not entitled to reimbursement in connection with the 2002 refinancing.

Husband raises no issue with respect to the trial court's ruling on the second refinance.

**D.  *Vehicle Equalizing Payment***

Husband contends the trial court erred by ordering him to make an equalizing payment to Wife of $2,973 in connection with the division of the parties' three vehicles without considering the $4,600 "cash for clunkers" credit the parties were given for trading in Husband's separate property Toyota Previa when they purchased the 2010 Lexus in 2009.  Allocating the Previa credit to himself, Husband maintains the court should have ordered Wife to make an equalizing payment to him of $1,625.[5]

The "cash for clunkers" program was established by the Consumer Assistance to Recycle and Save Act of 2009 (CARS program).  (74 Fed.Reg. 37878 et seq. (Jul. 29, 2009).)  Under the CARS program, which lasted from July 1 to November 1, 2009, consumers who traded in an eligible older model vehicle and purchased a new fuel efficient vehicle received a monetary credit of $3,500 or $4,500 toward the purchase or lease of the new vehicle.  (*Ibid.*)  The vehicles traded in were required to be crushed or shredded.  (74 Fed.Reg. 37879.)  The CARS program was designed promote new car

_____

[5] The credit exceeds the trial court's $3,049 valuation of the 2010 Lexus.

9

purchases as well as to remove older less fuel efficient vehicles from the road. (*Ibid.*; U.S. Dept. of Transportation, Nat. Highway Traffic Safety Admin., Rep. to Congress, Consumer Assistance to Recycle and Save Act of 2009 (Dec. 2009) pp. 2–3.) Thus, the trade-in vehicle had to be in drivable condition, and continuously insured for one year prior to the trade-in. (74 Fed.Reg. 37884.)

In our view, Husband was not entitled to an equalizing payment based on the 2009 CARS program rebate. This was a rebate given as much (if not more) for the community's purchase of a new Lexus as for the trade-in of Husband's separate property automobile. The Previa would not even have been eligible for the CARS program if the community had not expended funds to maintain it in a drivable condition and insure it during the marriage. Moreover, the CARS program rebate was not based on the Previa having any actual trade-in value. The purpose of the incentive was to get owners to relinquish old vehicles such as the Previa, and make sure they were not driven again. Awarding Husband a higher value for the Previa than the value of the 2010 Lexus received by Wife would be an undeserved windfall to Husband. Based on these considerations, we find no error or abuse of discretion in the trial court's implied finding Husband was not entitled to a credit based on the Previa trade-in.

### III.  DISPOSITION

The judgment is affirmed.

10

 

 

 

_____
Margulies, Acting P.J.


We concur:


_____
Banke, J.


_____
Becton, J.*

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.