Filed 11/30/22  Marriage of Keel CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of GREG G. and MARIE KEEL. | |
| GREG G. KEEL,<br><br>    Respondent,<br><br>        v.<br><br>MARIE KEEL,<br><br>    Appellant. | G060524<br><br>(Super. Ct. No. 14D007669)<br><br>O P I N I O N |

            Appeal from a postjudgment order of the Superior Court of Orange County, Paul T. Minerich, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

            The Law Offices of Patrick A. McCall and Patrick A. McCall for Respondent.

            Behrouz Shafie & Associates and Behrouz Shafie for Appellant.

                            *        *        *

In this marital dissolution action, Marie appeals from the denial of her postjudgment request for order (RFO) to adjudicate an allegedly omitted asset under Family Code section 2556, which provides the court with ongoing jurisdiction to adjudicate community assets that were omitted from any prior division of property.[1] Her claim fails, however, because the allegedly omitted asset—a down payment on a residence that Marie claims was funded by a separate property inheritance—has been repeatedly and expressly litigated. Thus it is not an omitted asset, and the court did not err in refusing to treat it as such. Accordingly, we affirm.

FACTS

The parties dispute their date of marriage. Greg claims they were married in September 2000. Marie claims they were married in October 2004. Greg petitioned for dissolution in August 2014. The court issued a status-only judgment of dissolution in February 2017, reserving all other issues. The court determined the parties date of separation was "sometime in May 2011."

One of the primary issues in this dissolution proceeding has been the division of the family house, which was, as we noted in a prior appeal, "the only marital real property asset." (*In re Marriage of Keel* (Oct. 11, 2019, G055720) [nonpub. opn.] ("Prior Opinion") at p. 2.) As is the case in this appeal, our Prior Opinion was focused on the house. Because the facts and procedural history recited in our Prior Opinion remains relevant to this appeal, we will quote its recitation of facts at some length.

"Escrow on the house (sometimes called the house and sometimes called the Fareholm residence) closed in September 2010. At the date of trial, the house had an appraised value of $1,325,000. The evidence at trial was directed primarily to three issues: (1) whether the house was purchased before or after the date of separation, (2)

---

[1] We refer to the parties by their first name to avoid confusion. We mean no disrespect. All statutory references are to the Family Code unless otherwise stated.

2

whether the down payment for the house came from separate or community property, and (3) whether Marie and Greg intended the house to be separate or community property." (Prior Opinion at pp. 2-3.)

"It was stipulated that $30,000 of the down payment for the house was a gift from Marie's mother. The explanations of Marie and of Greg on the source of the rest of the down payment and Greg's involvement in the purchase were in direct contradiction.

"Marie (originally from Japan) has a degree in mathematics from Imperial College, London, United Kingdom, and has been a CPA since 2000. Marie testified that Greg was not involved in purchasing the house except to do the final walkthrough in August 2010. She testified that over $232,000 used for the down payment came from an inheritance from her father, she deposited the inheritance money into her bank account in Japan, that account was in her name only, and joint bank accounts do not exist in Japan.[2] The money was transferred to Marie's separate property bank account in the United States, and then deposited into escrow. Marie testified she used inheritance money and money from her mother to make the mortgage payments.

"In the original information sheet provided to escrow, Marie identified herself as a married person. She later instructed escrow to change married person to single person for title vesting. She took title to the house as a single woman. The inspection report had the name of both Marie and Greg on it. Marie testified that was a mistake.

"Greg testified he was the one who found the house and visited it three times before the close of escrow. Before deciding to purchase the house, he had looked at no fewer than 25 houses. In March 2010 Marie sent Greg an e-mail stating, 'I want you to see the house; otherwise, I was going to make an offer without seeing it.' In June

_____

[2] This claim will prove particularly important for the present appeal as it demonstrates Marie already litigated the issue of her down payment. More on that below.

3

2010, Greg sent Marie an e-mail stating, 'What houses do you want me to go see?  Please let me know, so I can look them up.'  In June and July 2010, Marie sent Greg e-mails asking him to look at several houses, including the one they eventually purchased.  Greg sent Marie e-mails about various houses for sale.

"Greg testified he did not sign escrow documents but did sign loan documents and title papers.  He believed he and Marie had purchased the house as a married couple and he was on title.  He never discussed with her the possibility he would not be on title.  He learned he was not on title only during the dissolution proceedings.

"Greg testified that while he and Marie were married, they maintained joint bank accounts in Japan and Thailand, while Marie had a separate account at Chase Bank in the United States.  The joint account in Japan was used to pay their living expenses when they lived in Japan.  Greg testified that money acquired over their years of marriage (including profits from Marie's gem business) was deposited into Marie's Chase Bank account and used for the down payment on the house.  He had no documentation regarding any bank account in Japan.  He testified that other than the $30,000 from Marie's mother, the down payment on the house came from income acquired during the marriage that had been deposited into the Chase account.

"Marie testified that from April through May 2011 she and Greg communicated only by telephone and e-mail.  She testified she filed a divorce action in Japan and advised Greg of it by e-mail in April or May of 2010. Marie did not bring any of the Japanese divorce papers with her to trial.

**"THE TRIAL COURT'S RULINGS**

"The court issued a ruling and made findings in the minutes for June 20, 2017.  The trial court found the house was community property subject to a $30,000 credit under Family Code section 2640 to Marie and found, by a preponderance of the evidence, the intent to end the marriage was not expressed until after the house was

4

purchased. On the issue of the date of separation, the court stated it had 'no confidence' in Marie's testimony.

"Because the house was purchased before the date of separation, it was subject to the community property presumption. The court found that Marie had failed to rebut that presumption, stating: 'In the Court's view, [Marie] intentionally embarked on a course of conduct to make [Greg] believe that the house was being purchased as part of the marital property. [¶] The Court believes [Marie] kept [Greg] in the dark as to her plan to purchase the property alone. [¶] The Court finds [Marie]'s conduct is sufficient to invoke Family Code Section 1101.[3] [Marie]'s conduct is not so egregious to consider awarding [Greg] the entire community interest in the property.' The court found the house to have a value of $1,325,000. . . .

"A judgment on reserved issues was filed on September 13, 2017. The judgment includes a more detailed version of the findings recited in the June 20 minutes. The judgment includes this finding: 'The Court finds that it was the intention of the parties to jointly purchase the Fareholm residence, i.e., as community property, but [Marie] intentionally manipulated the transaction so as to only place her name on title on the Fareholm residence. The Court notes that [Marie] is a CPA. The documentation regarding the loan and other documents involving the residence concludes that [Marie] intentionally embarked on a course of conduct to make [Greg] believe that the Fareholm residence was being purchased as part of the marital property. [Marie] kept [Greg] in the dark about the transaction. Said actions on the part of [Marie] are found to be a breach of fiduciary duty which is in violation of Family Code Section 1101.' (Underscoring omitted.)" (Prior Opinion at pp. 3-6.)

Marie requested a statement of decision on several topics, including, "The source of funds used for purchase of the real property located at 7940 Fareholm, Los

---

[3] Section 1101 provides a claim by one spouse against another for breach of fiduciary duty.

Angeles, California ('the property' herein) and any credits due to the Respondent pursuant to family code Section 2640, including [¶] a. funds used for the down payment on the purchase of the property [and] [¶] b. funds coming from Respondent's father's inheritance . . . ." The court denied that request as untimely.

Afterward, Marie filed a motion to vacate the judgment and for a new trial. Among other things, Marie sought "the opportunity" to subpoena "the Japanese Bank which Greg Keel testified was a joint bank account." She also claimed "the Court erroneously determined that the monies [Marie] had inherited from her late father's estate, were the result of a sale of community jewelry, though no evidence regarding this purported jewelry was presented, and [Marie] denied that the gems existed. This is an error of the Court, and evidence which would have proven the truth of [Marie's] testimony regarding the source of the actual funds, was not admitted." She went on: "Furthermore, the Court did not allow [Marie] to present an English translation of her Japanese bank account, and evidence of her Chase account was not admitted, which would have shown the Court that [Marie's] testimony regarding the source of funds for the down payment of the property was the inheritance from her father, not a purported community gem sale, which [Marie] denied ever existed. In fact, testimony revealed that the money came from [Marie's] inheritance and was deposited into her sole bank account. [Greg] claimed it was in a joint account in Japan, but as [Marie] testified at trial, on June 20, 2017 (Pg 6) 'That is 1000 percent impossible, because in Japan, by law, joint account does not exist.' [Marie] further testified that she deposited her money from her bank account in Japan to her account at Chase Bank in Los Angeles." Her motion concluded, "The court determined, in error, that monies [Marie] had inherited from her late father's estate were the result of a sale of community jewelry, though no evidence regarding this purported jewelry nor the sale of the purported jewelry was presented, whereas [Marie] had evidence confirming that she had inherited the monies into her separate, solely owned bank account in Japan, and transferred the funds into her Chase

6

account. [¶] It is inherently unfair and prejudicial to have excluded the evidence of [Marie's] inheritance, and allow [Greg] to take advantage of that and knowingly argue to the Court denying this inheritance. The court should have allowed [Marie] to present an English translation of her Japanese bank account, and of her Chase account, which will show the court that her testimony regarding the source of funds for the down payment of the property was the inheritance from her father, not a purported community gem sale."

The court denied the motion on the ground, inter alia, that any additional evidence she wished to present could have been obtained before trial.

Afterward, Marie appealed. In the prior appeal, she claimed the court erred in effectively refusing to allow her to reopen discovery. (Prior Opinion at p. 8.) We concluded the court acted within its discretion, and further noted that Marie had not identified anything in the record to impeach the court's finding that she could have obtained and presented the evidence she now sought during the original trial. (*Ibid.*)

In the prior appeal, Marie further argued that the court's ruling denied her constitutional right to her separate property in the form of the inheritance from her father. (Prior Opinion at p. 11.) We interpreted that argument as a sufficiency of the evidence argument, and we concluded that Greg's testimony supported the court's conclusion that the down payment was drawn from community funds (other than the $30,000 gift from Marie's mother). (*Ibid.*)

After remand, Marie filed this appeal, a request for order seeking three categories of relief: $262,288 in separate property reimbursements under section 2640, $24,516 in *Epstein* credits for post-separation repairs and improvements to the family residence[4], and $222,111 for "Post Separation Reimbursement preserve community property asset." Only the section 2640 reimbursement is at issue in this appeal.[5] Marie

---

[4]    *See In re Marriage of Epstein* (1979) 24 Cal.3d 76.

[5]    Section 2640 provides a right of reimbursement for contributions to a community asset traced to separate property funds.

7

attached a declaration from a forensic accountant who came to the preliminary conclusion that $262,288 of the down payment was funded using Marie's separate property funds. The accountant purports to have traced the funds used for the down payment to an inheritance and gifts from Marie's parents.

On November 27, 2020, the court denied all of Marie's requests for reimbursements. With regard to the section 2640 reimbursement claim, the court held it had already denied that same request at trial and in ruling on the subsequent motion to vacate the judgment and for a new trial.[6] Marie appealed from the court's order on November 27, 2020.

## DISCUSSION

The substantive basis of Marie's claim is section 2640, which provides a right of reimbursement for separate property contributions to a community property asset. The problem is, she already litigated that issue in the prior trial. To get around the obvious res judicata problem, Marie claims her contribution to the down payment was an omitted asset under section 2556, and that the court erred in refusing to treat it as such. That section provides, "In a proceeding for dissolution of marriage, . . . the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties *that have not been previously adjudicated by a judgment in the proceeding.* A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability." (Italics added.) In deciding whether to grant relief under section 2556, "'"[T]he crucial

---

[6] At this point in the proceedings, a different judge ruled on Marie's RFO as the previous judge, Hon. Franz Miller, had retired.

8

question is whether the [community property] benefits were actually litigated and divided in the previous proceeding."'" (*In re Marriage of Georgiou and Leslie* (2013) 218 Cal.App.4th 561, 575.)

We have been unable to locate any authority on the appropriate standard of review. Whether something has been "'actually litigated'" will generally turn on the procedural history, which is usually not subject to dispute. That is the case here. In such circumstances, the inquiry is a legal determination on undisputed facts. Accordingly, we will apply a *de novo* standard of review.

There can be no doubt in this case that section 2556 simply does not apply to the down payment on the residence. Marie's entitlement to reimbursement for her separate property contribution for the down payment has been *repeatedly* litigated.

It was litigated at trial. In the original judgment the court stated, "With respect to the purchase of the Fareholm residence, Respondent is entitled to a Family Code Section 2640 reimbursement in the amount of $30,000.00 resulting from a gift from her mother so as to purchase the residence. *Respondent's other requests for reimbursements pursuant to Family Code Section 2640 are denied due to insufficient and credible evidence.*" (Italics added.)

It was litigated in the motion to vacate the judgment and hold a new trial. As we recited in the facts above, Marie made the inheritance a central feature of her motion. The court denied that motion on the ground that the evidence she sought to admit was available to her before trial.

And it was litigated in the prior appeal in this matter. As we stated previously, "Marie argues the trial court's ruling denied her right, guaranteed by the California Constitution, that property acquired during a marriage by gift, will, or inheritance is separate property. [Citations.] In effect, this is a sufficiency of the evidence argument. *She contends her rights were denied because she testified that she had received an inheritance from her father, the inheritance had been deposited into her*

9

*separate property bank account in Japan, and funds from that separate property bank account had been used to pay all but $30,000 of the down payment on the house*." (Prior Opinion at p. 11 (Italics added.).) We concluded that contrary testimony from Greg supported the court's findings.

Marie's briefs offer no cogent response to this simple line of reasoning. She completely ignored it in her opening brief. Forced to confront the issue in her reply brief, she claimed, without explanation, "The procedural history is mostly irrelevant . . . ." How could that be when the *crucial question* is whether her right to reimbursement was previously litigated? She then blithely asserted, without engaging the record at all, "The issue of right to reimbursements was never litigated during the trial or anytime afterward." As our recitation of the procedural history above demonstrates, her assertion flies in the face of the facts. The picture that emerges from that history is that Marie did a slipshod job of presenting evidence of her claims at trial, and now she wants a second bite at the apple with better evidence. Section 2556 is of no help to her under these circumstances. Accordingly, the court did not err in determining that her alleged separate property contribution to the down payment has already been litigated.[7]

---

[7] So far as we can tell from her briefs, Marie is not appealing the court's decision to refuse her $24,516.00 in *Epstein* credits. However, she does mention it in a single line in her opening brief, and she devotes a paragraph to the issue in her reply brief, buried under a heading that has nothing to do with *Epstein* credits. To the extent that her briefs can be construed as appealing that aspect of the court's decision, the argument has been waived by failing to adequately brief the issue. (Cal. Rules of Court, rule 8.204 (a)(1)(B) [briefs must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"]; *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"]; *Cold Creek Compost, Inc. v. State Farm Fire & Casualty Co.* (2007) 156 Cal.App.4th 1469, 1486 ["Arguments cannot properly be raised for the first time in an appellant's reply brief, and accordingly we deem them waived in this instance"].)

DISPOSITION

The postjudgment order dated November 27, 2020, is affirmed.

Respondent shall recover his costs incurred on appeal.


MARKS, J.*

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11